UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOMO WILLIAMS, a/k/a "Ojo,"

                                    Petitioner,

                  -against-

UNITED STATES OF AMERICA,

                                    Respondent.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  _7/11/2022___

21 Civ. 1334 (AT)
11 Cr. 663-2 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Petitioner, Jomo Williams, currently incarcerated at United States Penitentiary Coleman I, brings this motion under 28 U.S.C. § 2255 to vacate his conviction in *United States v. Williams*, No. 11 Cr. 663 (S.D.N.Y.), on the ground that his counsel was ineffective during trial. ECF Nos. 203, 205.[1]  For the reasons stated below, Petitioner's motion is DENIED.

## BACKGROUND

The Court assumes familiarity with the prior proceedings in this matter and summarizes the relevant facts only briefly here.

In April 2013, Petitioner was indicted, along with co-defendants Khalid Barbee and Kevin Prince,[2] in a superseding indictment charging them with conspiracy to commit and committing a Hobbs Act robbery in connection with the robbery and murder of a drug dealer in 2006.  ECF No. 17.  The Court appointed Fredrick Cohn as Petitioner's attorney pursuant to the Criminal Justice Act.  ECF No. 23.  In February 2014, a second superseding indictment added additional charges of using a firearm and causing the death of an individual through the use of a firearm during a crime of violence, in connection with the same event.  ECF No. 50.

In May 2014, Petitioner and Barbee proceeded to trial before this Court.  5/5/2014 Docket Entry.  During the voir dire, the Court questioned the jurors in open court, but permitted

---

[1] All ECF citations are to the criminal docket, No. 11 Cr. 663.
[2] In January 2014, Prince pleaded guilty.  1/2/2014 Dkt. Entries.

them to approach the bench along with the attorneys to discuss possible grounds for disqualification. Voir Dire Tr. at 11:1–7, ECF No. 210-5. When this occurred, Cohn, upon returning to his seat, summarized to Petitioner what was said at the bench. Cohn Decl. ¶ 9, ECF No. 210-1. At the close of the voir dire, defendants' counsel requested a recess to converse with their clients, which the Court granted. Voir Dire Tr. at 150:7–151:15. When court resumed, the Court had the parties make their peremptory challenges in the robing room, out of the presence of Petitioner and Barbee. *Id.* at 152:8–16. In the robing room, Cohn confirmed to the Court "that the defense wanted to handle the peremptories here in the robing room outside the presence of [their] clients," and the attorney for Barbee stated that they "had conferences [with their clients] prior to coming in [t]here, . . . and . . . reviewed the matter with them and . . . explained to them the procedures and they said it was okay." *Id.* at 153:11–19. After the parties made their peremptory challenges, the final slate of jurors was impaneled and sworn in open court. *Id.* at 161:5–162:13.

During the trial, the Government called Joseph Rosario as a witness. Trial Tr. at 97:4–7, ECF No. 87. Prior to trial, Petitioner discovered that Rosario made statements to the Bronx County District Attorney, recorded on video (the "Video"), which were inconsistent with the testimony he was expected to give at trial regarding when he had met Petitioner. Trial Tr. at 3:7–19, ECF No. 85. Cohn sought to admit the entire 20-minute video because it contained prior inconsistent statements. *Id.* at 3:20–4:6; ECF No. 181. The Government agreed that the Video contained prior inconsistent statements but argued that it should not be admitted because Rosario intended to admit to making the statements, or, alternatively, that only the portion of the Video containing the prior inconsistent statements (the "Video Excerpts") should be admitted. Trial Tr. at 5:10–23, 6:19–7:6, ECF No. 85. The Court ruled that it would not admit the entire Video, and

that it would admit the Video Excerpts only if Rosario did not admit to the prior inconsistent statements. *Id.* at 8:11–19.

Rosario admitted to the prior inconsistent statements, both on direct and cross-examination. Trial Tr. at 134:20–138:8, 181:1–182:18, ECF No. 87. Days later, after Rosario had been excused, the Government informed the Court that it had discovered additional Second Circuit precedent, and that it, therefore, withdrew its objections to admitting the Video Excerpts. Trial Tr. at 598:15–23, ECF No. 95. The parties agreed to admit the Video Excerpts, *id.* at 598:24–599:1, and Cohn renewed his request to have the full video admitted, *id.* at 599:9–12. The Court permitted the defense to play only the Video Excerpts. *Id.* at 601:9–12, 601:16–19.

During jury deliberations, the Court received a note from the jury stating "We need to be in a room where we can discuss our ideas freely. We are not arguing or yelling. We can't whisper. We are uncomfortable that we can be heard." ECF No. 99 at 863:21–864:1. An Assistant United States Attorney explained that a court security officer ("CSO") had told him that "at one point the jury was loud enough that they could be heard in the courtroom in the hallway, so he stuck his head in and told them they might want to keep it down so they wouldn't be heard there," which the Government "suspect[ed] is what caused the note." *Id.* at 864:5–12. The Court ordered the CSO not to have any contact with the jury, and then, after discussing how to proceed with the attorneys, decided to move the jury deliberations to a different jury room. *Id.* at 864:15–867:23.

The jury found Petitioner guilty on all counts. ECF No. 84. After the verdict, Cohn was told by "someone, perhaps one of the court officers, that the jury had requested to be escorted from the building and that they were fearful." ECF No. 103 at 1. Because of that statement, as well as the jury's note and the CSOs being present in the courtroom, Cohn asked to interview the

3

jurors to investigate possible jury intimidation. *Id.* at 2–3. At a conference held to discuss these concerns, the Court denied his request because the issues raised by Petitioner did not warrant interviewing the jurors. Conference Tr. at 6:21–7:13, ECF No. 117.

Cohn then moved for a new trial under Federal Rule of Criminal Procedure 33, arguing that the entire Video should have been admitted because it would have shown Rosario's body language when he was lying, and that admitting only the Video Excerpts, after Rosario had left the stand, was "meaningless" in curing the error. ECF No. 110 at 10–14. The Court denied this motion, determining that there was no body language on the Video that "would have allowed the jury to meaningfully compare it with [Rosario's] body language or demeanor at trial," and, therefore, the Video was not probative and it did not matter when it was played. Order at 9–15, ECF No. 130. In addition, the Court concluded that the motion was "doomed" because there was "ample evidence" apart from Rosario's testimony that demonstrated Petitioner's guilt. *Id.* at 15–17.

On April 15, 2015, Petitioner was sentenced to thirty years' imprisonment. ECF No. 173 at 3. At sentencing, Petitioner expressed his frustration with Cohn, stating, among other things, that he wished to have been present at jury challenges, but that Cohn told him that was not permitted. Sentencing Tr. at 36:4–13, ECF No. 177.

Cohn filed a notice of appeal for Petitioner, ECF No. 175, and Robin Smith was then substituted as counsel by the Second Circuit. *United States v. Williams*, No. 15-1432, ECF No. 13 (2d Cir. May 6, 2015). Before the Second Circuit, Petitioner argued in relevant part that (1) the Court's preclusion of the Video was reversible error, and (2) the Court's failure to permit an investigation of the possible jury intimidation and the extent to which the CSO had improper communications with the jury violated his constitutional rights. *Id.*, ECF No. 35 at 54–63,

69–87.

The Second Circuit denied the appeal, affirming that the unadmitted portions of the Video had a low probative value, and that, even if there were error, it was harmless "given the significant other evidence in this case." *United States v. Williams*, 756 F. App'x 73, 75–76 (2d Cir. 2019). It dismissed Petitioners' other contentions in one line, stating that it had "considered the remainder of Williams's arguments and f[ound] them to be without merit." *Id.* at 76.

On September 28, 2020, Petitioner, proceeding *pro se*, filed a letter with the Court, requesting appointment of counsel to help prepare a motion under 28 U.S.C. § 2255, which included a *pro se* § 2255 motion. ECF No. 203. The Court appointed John C. Meringolo, his current counsel, who filed a petition to vacate Petitioner's sentence. ECF No. 205.

## DISCUSSION

I.   <u>Legal Standard</u>

28 U.S.C. § 2255 permits a prisoner sentenced by a federal court to petition that court to vacate, set aside, or correct his sentence if it was imposed "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). Such a petition can be based on a claim of ineffective assistance of counsel in violation of the Sixth Amendment. *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).

To succeed on a claim of ineffective assistance of counsel, the petitioner must satisfy the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). To satisfy this test,

> (1) he must show that counsel's performance was deficient, so deficient that, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance, and (2) he must show that the deficient performance prejudiced the defense, in the sense that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011) (quotation marks and citations omitted).  "The [*Strickland*] claim must be rejected if the defendant fails to meet either the performance prong or the prejudice prong."  *Id.* at 85.  And, the Court's "scrutiny of counsel's performance must be highly deferential" because counsel is entitled to "a strong presumption that [his or her] conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689; *see also Rivas v. Fischer*, 780 F.3d 529, 547 (2d Cir. 2015).

II.   <u>Evidentiary Hearing</u>

"In ruling on a motion under § 2255, the district court is required to hold a hearing [u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  *Gonzalez*, 722 F.3d at 130 (citations omitted).  Therefore, in order for a hearing to be required, a petitioner "must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief."  *Id.* at 131 (citing *Machibroda v. United States*, 368 U.S. 487, 494 (1962)).

The Court does not conclude that a hearing is necessary in this action.  The Court may rely on an "attorney's 'detailed' and 'credible' affidavit" when resolving a motion under § 2255.  *Salas-Soto v. United States*, No. 02 Civ. 9306, 2004 WL 63494, at *4 (S.D.N.Y. Jan. 13, 2004) (quoting *Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001)).  Moreover, Second Circuit precedent "permits a 'middle road' of deciding disputed facts on the basis of written submissions[,]" when a district court "reasonably decide[s] that the testimony of [the petitioner] and his trial counsel would add little or nothing to the written submissions."  *Raysor v. United States*, 647 F.3d 491, 494–95 (2d Cir. 2011) (citations omitted).

Here, there are no material facts in dispute.  *See id.* at 494 (noting that a hearing should

6

be held "[i]f material facts are in dispute" (citation omitted)). And, Cohn's affidavit is detailed and supported by contemporaneous evidence in the record. Therefore, the Court finds that it does not need to hold a hearing because it can resolve this motion based on the record, the evidence submitted by the parties, including Cohn's affidavit, and the Court's own "intimate[] familiar[ity] with the trial proceedings and the events and circumstances surrounding them." *Chang*, 250 F.3d at 86; *see also Guerrero v. United States*, No. 20 Civ. 4130, 2021 WL 3172985, at *4 (S.D.N.Y. July 27, 2021).

III.   <u>Presence at Peremptory Challenges</u>

Petitioner first contends that Cohn erred by denying Petitioner's right to be present at trial because the peremptory challenges occurred in the robing room outside of Petitioner's presence. Pet. Mem. at 12–14, ECF No. 206; Pet. Reply at 1–3, ECF No. 211. "It is a well-settled principle of constitutional law that a criminal defendant has the right 'to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings,'" including jury selection. *Cohen v. Senkowski*, 290 F.3d 485, 489 (2d Cir. 2002) (quoting *Faretta v. California*, 422 U.S. 806, 819 n.15 (1975)). However, this right—rooted in both the Fifth and Sixth Amendments and codified in Federal Rule of Criminal Procedure 43(a)—is "not absolute." *United States v. Rivera*, 791 F. App'x 200, 210 (2d Cir. 2019) (citation omitted). "Instead, 'it is triggered only when the defendant's presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" *Id.* (quoting *Cohen*, 290 F.3d at 489).

The Second Circuit has held that a defendant's constitutional right to be present at jury selection is satisfied if (1) he was present during the questioning of the jurors, (2) he had an opportunity to confer with counsel prior to the challenges being made, and (3) he was present during the formal announcement of the stricken and seated jurors. *Cohen*, 290 F.3d at 490; *see*

7

*also Aller v. Lape*, No. 09 Civ. 1192, 2011 WL 1827443, at *6 (E.D.N.Y. May 12, 2011) (collecting cases).

Here, Petitioner's right to be present was not violated. Petitioner was present during the questioning of the jury, *see* Voir Dire Tr. at 34:18–19, 10:19–150:2, and when the challenges were given formal effect in open court, *id.* at 161:4–162:13.

Moreover, the record makes clear that Petitioner was given opportunity to confer with counsel prior to the peremptory challenges. After juror questioning was complete, Cohn told the Court, "[W]e have to confer, and the client wants to be involved in the conference . . . will you give us about a half an hour?" to which the Court replied, "All right. Very good." Voir Dire Tr. at 150:7–24. The Court told the jury panel to take a ten-minute break, and there was then a recess. *Id.* at 151:2–16. When court resumed, the attorneys agreed to go to the robing room to conduct peremptory challenges. *Id.* at 152:8–12. In the robing room, Barbee's counsel stated that the attorneys had conferred with their clients and explained the procedures. *Id.* at 153:16–18. Additionally, at sentencing, Petitioner—although he expressed dissatisfaction with his lawyer and his wish to be present at the challenges—stated that he discussed his being present at the challenges with his attorney. ECF No. 177 at 36:4–13.

This record supports Cohn's statement that "[he] had discussed the jury selection—including [his] thoughts on whom to strike—and sought [Petitioner's] input on the same before [they] exercised [their] peremptory strikes," as well as his statement that he and Petitioner, along with Barbee and his counsel, "all discussed on which potential jurors [they] would exercise [their] peremptory strikes before [they] actually exercised those strikes." Cohn Decl. ¶ 10. Because the record is clear that Petitioner had the opportunity to discuss the strikes with counsel prior to counsel making the challenges, Petitioner's rights were not violated by his exclusion

8

from the robing room, and Cohn did not err in allowing that exclusion.  *See United States v. Beqiraj*, 788 F. App'x 73, 74–75 (2d Cir. 2019); *Haywood v. Portuando*, 288 F. Supp. 2d 446, 464 (S.D.N.Y. 2003).

Moreover, insofar as Petitioner is protesting his not being present at sidebars during voir dire, "the Federal Constitution generally does not require a defendant's presence at sidebar conferences."  *Morales v. Superintendent Dale Artus*, No. 05 Civ. 3542, 2006 WL 3821488, at *17 (S.D.N.Y. Dec. 28, 2006) (quotation marks and citation omitted).  The Court discussed the sidebar process in open court in the presence of Petitioner, Voir Dire Tr. at 8:16–18, 11:1–7, and neither Cohn nor Petitioner raised a challenge at that time, thereby waiving any right Petitioner had to be present at the sidebars, *see United States v. Lorenzana*, 380 F. App'x 13, 15 (2d Cir. 2010); *United States v. Gallego*, 191 F.3d 156, 171 (2d Cir. 1999), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004).  Furthermore, Cohn states, uncontradicted by Petitioner, that after every sidebar he summarized the issues discussed for Petitioner.  Cohn Decl. ¶ 9; *see also Sanchez v. Duncan*, 282 F.3d 78, 82 (2d Cir. 2002) (rejecting a habeas claim based on a right to be present at voir dire sidebar conferences where petitioner "does not adequately refute [respondent's] assertions . . . that [petitioner] had ample opportunity to consult with his attorney about the conferences").

Finally, insofar as Petitioner argues that it was ineffective assistance of counsel to recommend he not be present at the peremptory challenges, Cohn has explained that he advises clients not to attend conferences in the robing room to prevent the jury from seeing the security around a defendant, thus making the jury view the defendant as dangerous.  Cohn Decl. ¶ 11.  This is a reasonable explanation, and *Strickland* instructs the Court not to "second-guess counsel's assistance" where it is reasonable under the circumstances.  *Strickland*, 466 U.S. at

686–91.  Therefore, Petitioner cannot demonstrate that his not being present for the peremptory challenges in the robing room fell below "the wide range of professionally competent assistance" required of counsel, *id.* at 690, failing the first *Strickland* prong.

Additionally, Petitioner has not shown prejudice.  In *Weaver v. Massachusetts*, the Supreme Court—assuming *arguendo* that *Strickland* prejudice can be shown through demonstrating that "attorney errors rendered the trial fundamentally unfair"—stated that "the burden is on the defendant to show either a reasonable probability of a different outcome in his or her case or, as the Court has assumed for these purposes, to show that the particular . . . violation was so serious as to render his or her trial fundamentally unfair." 137 S. Ct. 1899, 1911 (2017) (citation omitted).  "Any error in a defendant's voir dire absence is not a defect affecting the framework within which the trial proceeds, nor is it one of those errors that necessarily renders a trial fundamentally unfair[.]"  *United States v. Riddle*, 249 F.3d 529, 535 (6th Cir. 2001) (quotation marks, citations, and alteration omitted); *see also Sanchez*, 282 F.3d at 81 ("[A]ny alleged error at trial related to [defendant's] absence from voir dire bench conferences was harmless.").  Therefore, Petitioner must demonstrate actual prejudice, and he has not done in any non-speculative fashion.  Pet. Mem. at 14; *see Eley v. Ercole*, No. 08 Civ. 917, 2010 WL 2695522, at *7 (E.D.N.Y. May 6, 2010), *report and recommendation adopted*, No. 08 Civ. 917, 2010 WL 2695521 (E.D.N.Y. July 2, 2010).

Accordingly, Petitioner's absence from the peremptory challenges and voir dire sidebars does not constitute ineffective assistance of counsel.

IV.     Investigation into Jury Intimidation

Petitioner argues that Cohn mishandled the note from the jury asking to move its deliberations, contending that Cohn should have, in the moment, objected to the Court's handling

of this note or interjected to ask the jurors about intimidation—and, if necessary, moved for a mistrial. Pet. Mem. at 14–17.

Petitioner's first argument, that Cohn should have objected to the Court's handling of the note, fails because Petitioner does not identify any errors in the Court's process. When the jury submits a note to the Court, the following procedure must be followed:

> (1) the jury inquiry should be in writing; (2) the note should be marked as the court's exhibit and read into the record with counsel and defendant present; (3) counsel should have an opportunity to suggest a response, and the judge should inform counsel of the response to be given; and (4) on the recall of the jury, the trial judge should read the note into the record, allowing an opportunity to the jury to correct the inquiry or to elaborate upon it.

*United States v. Mejia*, 356 F.3d 470, 475 (2d Cir. 2004) (citation omitted). Here, the Court received a note from the jury in writing and read it into the record. ECF No. 206-4 at 863:21–864:1. The Government then stated that it had "already discussed this with defense counsel," and explained that the CSO had improperly made contact with the jurors. *Id.* at 864:5–12. The Court, therefore, instructed the CSO to have no contact with the jurors, and asked, "Is there any other input?" *Id.* at 864:15–22. Cohn suggested that the jury be moved to a different room for deliberation to ensure the jurors did not fear being overheard; and the parties and the Court discussed options, concluding that the jury should be transferred to a nearby jury room. *Id.* at 864:23–867:23. The Court marked the note as an exhibit. *Id.* at 867:11–12. And, when the jury returned, the Court read the note into the record again. *Id.* at 873:1–11. Therefore, the correct procedure was followed.

Additionally, Cohn's not inquiring as to the basis for the note and moving for a mistrial, is not ineffective assistance of counsel. As Cohn acknowledged after the verdict, "[t]he improper contact was not in itself grounds for any defense extreme action and none was taken or

contemplated." ECF No. 107; Cohn Decl. ¶ 16 ("I did not believe that the CSO's improper contact with the jury equated to an attempt to unduly influence or intimidate the jurors, nor did their statement that they wanted to be able to deliberate loudly demonstrate such undue influence or intimidation.").

Cohn's actions were well within the range of professional competence. When Cohn heard the note, there was a rational explanation for it—the CSO's statement. *See* ECF No. 117 at 7:1–13. And, although Cohn eventually became concerned about potential juror intimidation after the verdict, *see* ECF No. 103 at 1, at the time the note was read, a reasonable attorney could have concluded that the note stemmed from the CSO's comments, taken the Government and CSO's representation of what the CSO said as true, and reacted to fix the immediate problem of ensuring the jury felt comfortable deliberating. *See Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001) ("[C]ounsel's performance must be assessed on the basis of the facts of the particular case viewed as of the time of counsel's conduct without the benefit of hindsight." (quotation marks and citation omitted)). Indeed, once Cohn did believe he had sufficient evidence for a motion, he made one. ECF No. 103. Moreover, the Second Circuit's affirmance of this Court's decision that there was insufficient evidence of jury intimidation to permit investigation supports the reasonableness of Cohn's conclusions. *Williams*, 756 F. App'x at 76.

Accordingly, Cohn's handling of the note fails *Strickland*'s first prong.

V.   Admission of the Video

Furthermore, Petitioner contends that Cohn's treatment of the Video amounted to ineffective assistance of counsel. Specifically, Petitioner objects to Cohn allowing the Video Excerpts to be shown to the jury out of Rosario's presence—rather than calling Rosario back to the stand and confronting him with it. Pet. Reply at 4–6. Playing the Video Excerpts to Rosario,

12

Petitioner argues, would have permitted "any skilled attorney" to use Rosario's body language to demonstrate his unreliability as a witness. *Id*. at 5. He argues that this failure to call Rosario back is both a *Strickland* violation and a violation of the Confrontation Clause of the Sixth Amendment. Pet. Mem. at 19.

As to the ineffective assistance of counsel claim, as Cohn explains in his declaration, and as Petitioner argued to the Second Circuit, "it would have been a huge risk for [Petitioner] to re-call Rosario, the government's only witness without a violent record, who did not testify pursuant to a cooperation agreement." App. Brief at 62; Cohn Decl. ¶ 22 ("In light of the limitation that the Court had placed on me—allowing me only to introduce the inconsistent portions of Rosario's post-arrest statement—the only thing I would be able to elicit from Rosario is that he had already admitted to making those inconsistent statements during his direct testimony, effectively reminding the jury that he had been up-front about those inconsistent statements."). Therefore, the Court finds that the decision to not recall Rosario falls within the range of reasonableness for an attorney's actions.

Petitioner has also not established prejudice. Petitioner contends that "mismanagement of such a critical witness must have affected the outcome of the case, to the extent that if he were proven to be unreliable, there would have been no witness to the events immediately prior to and following the shooting." Pet. Mem. at 19. However, both this Court and Second Circuit rejected the existence of such prejudice. In denying Petitioner's prior motion for a new trial, this Court held that nothing in the Video "would have allowed the jury to meaningfully compare it with [Rosario's] body language or demeanor at trial." ECF Nos. 110, 130 at 12. Because of this lack of additional evidence from the Video, and there being ample other evidence demonstrating Petitioner's guilt, the Court held that there was no prejudice from the timing of the Video's entry.

*Id.* at 15–17.  The Second Circuit, faced with similar arguments, App. Brief at 58–63, 69–74, affirmed this Court's holding, *see Williams*, 756 F. App'x at 75–76.  Presented with no new facts in this motion, there is no basis to alter the Court's conclusion.  And, without any evidence of prejudice, the ineffective assistance of counsel claim fails.

Petitioner also suggests, without citation to law, that the failure to play the Video Excerpts to Rosario on the stand violates the Confrontation Clause of the Sixth Amendment. Pet. Mem. at 19.  This issue was raised to the Second Circuit in Petitioner's direct appeal, App. Mem. at 54–63, 69–74, and was found to be without merit, *Williams*, 756 F. App'x at 76.  As Petitioner presents the same ground for the violation here as on direct appeal, this claim fails. *United States v. Pitcher*, 559 F.3d 120, 123 (2d Cir. 2009) ("It is well established that a § 2255 petition cannot be used to relitigate questions which were raised and considered on direct appeal." (quotation marks and citation omitted)).

Accordingly, Cohn's treatment of the Video did not constitute ineffective assistance of counsel and it did not violate Petitioner's Sixth Amendment rights.

VI.    Additional *Pro Se* Claims

In his *pro se* application—styled as a request for appointment of counsel, but including a § 2255 motion—Petitioner raises additional claims not incorporated into this counseled brief. *See* Pet. *Pro Se* Mem., ECF No. 203 at 8–33.  These include (1) Cohn "stat[ing] that a signature should be forged" in discussing how to admit certain allegations in the indictment, (2) Cohn "disrespect[ing]" Petitioner's mother in a phone call, and (3) Cohn sleeping during trial.  *Id.* at 31–33.  The Court addresses these claims as well.

Cohn made a statement about the Court "forg[ing] a signature" on the indictment in connection with a discussion about the redaction of the indictment's forfeiture allegations, and

14

how those redactions would cause the signature to also be redacted. ECF No. 99 at 857:24–858:11. Immediately after making that statement, Cohn confirmed to the Court that he had no problem with the redaction. *Id.* Cohn explains that this statement was a joke, and that the Court understood it as such. Cohn Decl. ¶ 26. The Court does not find that the statement caused any prejudice. Therefore, this incident does not support a claim for ineffective assistance of counsel.

Furthermore, although it appears that the relationship between Cohn and Petitioner was not particularly harmonious, which may have been reflected in conversations between Cohn and Petitioner's mother, *see* Pet. *Pro Se* Mem. at 31–32; ECF No. 177 at 27:8–11; Cohn Decl. ¶ 28, Petitioner asserts no specific prejudice that arose from the "disrespect[]" shown to his mother, *see* Pet. *Pro Se* Mem. at 31–32; *see Daly v. Lee*, No. 11 Civ. 3030, 2014 WL 1349076, at *13 n.10 (E.D.N.Y. Apr. 4, 2014) (finding no *Strickland* violation when petitioner's counsel "engaged in a screaming and yelling match with petitioner"). Therefore, any disrespect shown to Petitioner's mother does not form the basis for a claim of ineffective assistance of counsel.

Finally, Petitioner asserts that Cohn fell asleep during trial on "a [couple] of occasions." Pet. *Pro Se* Mem. at 32. Cohn vigorously disputes that he slept during the trial. Cohn. Decl. ¶ 23. The Government also states that, "[t]he Government would have noticed if Cohn fell asleep at trial; it did not notice any such thing." Gov. Opp'n at 53, ECF No. 210.

A defendant "suffer[s] prejudice, by presumption or otherwise, if his counsel was repeatedly unconscious at trial for periods of time in which defendant's interests were at stake." *Tippins v. Walker*, 77 F.3d 682, 687 (2d Cir. 1996). In *Tippins*, however, the lawyer slept through a "substantial portion" of the trial. *Id.* at 682. He slept "every day," through up to 65% of the testimony of key witnesses, and was reprimanded by the judge twice. *Id.* at 697–89. The court reporter and others also recalled him snoring. *Id.* at 688.

15

Even taking Petitioner's allegations as true, his claims do not rise to that level. He alleges that Cohn fell asleep "on a [couple] of occasions," and Petitioner "would have to tap counsel on the leg[] to wake him up so counsel could pay attention." Pet. *Pro Se* Mem. at 32. He does not allege that Cohn slept through a substantial portion of the trial, or during the key portions of it. *Id.* Moreover, the record reflects Cohn's participation throughout the trial, including his objections during witness testimony and his participation during cross-examination by Barbee's counsel. *See, e.g.*, Trial Tr. at 136:25–137:2, 146:5–7, ECF No. 87; Trial Tr. at 372:17–20, 407:10–12; Trial Tr. at 544:22–23, ECF No. 93. Additionally, Cohn referred, in his summation, to statements in the Government's closing statement, indicating that he was paying attention then as well. ECF No. 97 at 733:23–734:3; 745:25–746:1; 746:20–23. The Court also observed Cohn closely throughout the trial and found him to be uncommonly alert at all times. Petitioner has not, therefore, demonstrated that Cohn's sleeping—if it occurred at all—rose to the level of the sleeping in *Tippins*, nor that there was any other prejudice. *See Howard v. United States*, No. 10 Civ. 2775, 2011 WL 1674800, at *5 (E.D.N.Y. May 3, 2011); *Cerome v. United States*, No. 08 Civ. 4019, 2011 WL 128563, at *4 (E.D.N.Y. Jan. 14, 2011) ("[W]here a petitioner alleges isolated 'episodes of inattention or slumber,' he must also adduce specific instances of prejudice" (quoting *Tippins*, 77 F.3d at 686)).

Accordingly, all of the additional assertions in Petitioner's *pro se* petition also fail to state a claim for ineffective assistance of counsel.

16

## CONCLUSION

For the reasons stated above, Petitioner's motion is DENIED.  The Clerk of Court is

directed to terminate the motions at ECF Nos. 203 and 205.

SO ORDERED.

Dated: July 11, 2022
       New York, New York

_____
ANALISA TORRES
United States District Judge

17